## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

**BYRON RICHARD**                              **CIVIL ACTION NO. 11-0419**

**VERSUS**                                      **MAGISTRATE JUDGE HILL**

**ISLAND OPERATING CO., INC., ET AL**     **BY CONSENT OF THE PARTIES**

*CONSOLIDATED WITH*

**JOSEPH FONTENOT**                             **CIVIL ACTION NO. 11-2084**

**VERSUS**                                      **MAGISTRATE JUDGE HILL**

**APACHE CORP.**                                **BY CONSENT OF THE PARTIES**

### RULING ON MOTIONS TO DISMISS

The defendant, Fluid Crane and Construction Company, Inc. ("Fluid Crane"),  has

filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in both of these consolidated

cases, arguing that the relevant Master Service Contract ("MSC") in effect in each of these

cases does not obligate Fluid Crane to provide "*Marcel* coverage"[1] to Island Operating

Company, Inc. ("Island Operating") in either case and, further, that any such requirement

would be null and void under the Louisiana Oilfield Anti-Indemnity Act ("LOAIA")[2].

Island Operating opposes the motions on the grounds that the pleadings and

attachments thereto state a valid cause of action and that the basis for the motion to dismiss

assumes facts not in the record which cannot be considered by the Court on a Rule 12(b)(6)

---

[1]*Marcel v. Placid Oil Co.,* 11 F.3d 563 (5th Cir. 1994)

[2]La. R.S. 9:2780.

motion.

For those reasons set out below, motions to dismiss are **denied.**

## I. FACTUAL BACKGROUND

Plaintiff, Byron Richard, filed the underlying lawsuit seeking damages for personal injuries which he sustained on March 21, 2010 while working in the course and scope his employment as a rigger with Fluid Crane. At that time, Richard was performing services for XTO Energy, Inc. ("XTO") on a fixed platform attached to the Outer Continental Shelf designated as South Marsh Island 142. The platform was located in the Gulf of Mexico off the coast of Louisiana. At the time of the accident, Fluid Crane and XTO (through Hunt Petroleum Corp., hereafter "HPC") were parties to a MSC dated January 26, 2002 as amended by agreement dated February 6, 2004.

Plaintiff Joseph Fontenot ("Fontenot") was also employed by Fluid Crane when he was injured on December 5, 2010 while performing services for Apache Corporation ("Apache") on a fixed offshore platform attached to the Outer Continental Shelf designated as EL 281A, located in the Gulf of Mexico off the Louisiana coast. Fluid Crane and Apache were parties to a MSC dated November 10, 2010 which governed the work activity being performed by Fontenot at the time of his accident.

At the time of the accidents involving both plaintiffs, Fluid Crane was covered under a Commercial General Liability insurance policy issued by First Specialty Insurance Corporation ("First Specialty"). Fluid Crane had no direct contractual relationship with the

Island Operating at the time of either of the plaintiffs' accidents. The underlying lawsuits were both settled by Island Operating who then filed third-party demands against, among others, Fluid Crane. As against a Fluid Crane, Island Operating claims that Fluid Crane breached its obligation under the MSCs to provide access to so-called "*Marcel* coverage" to Island Operating.

Fluid Crane argues that it complied with its contractual obligations, in both cases, under the MSCs, but that the premiums were paid only for coverage to XTO and Apache. Since those were the only premiums paid, only XTO and Apache were named as additional insureds under the First Specialty policy; Island Operating was not named an additional insured because First Specialty never received a premium payment for that coverage.

## II. LAW AND ANALYSIS

### Rule 12(b)(6) Motion to Dismiss Standard

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); Fed.R.Civ.P. 12(b)(6).  Moreover, it is proper to consider documents that a defendant attaches to a motion to dismiss, if such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim, as they form part of the pleadings. *Id*. at 498-499. Finally, in deciding a Rule 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. *Cinel v. Connick*, 15 F.3d 1338, 1343 fn.6 (5th Cir. 1994).

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) *quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming,* 281 F.3d at 161-162 *quoting Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

"A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796 *quoting Iqbal*, 129 S.Ct. at 1949.   This includes the basic requirement that the facts plausibly establish each required element for each legal claim. *Coleman v. Sweetin*, - - F.3d - - , 2014 WL 958275,

-4-

*4 (5th Cir. 2014) *citing Iqbal*, 129 S.Ct. at 1949 and *Twombly,* 550 U.S. at 557. However, a complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.* quoting *Iqbal*, 556 U.S. at 678 *quoting Twombly*, 550 U.S. at 555.

"Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555; *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013). Thus, "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombley,* 127 S.Ct. at 1965 *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004); *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 at fn. 27 (5th Cir. 2009).  If a plaintiff fails to allege facts sufficient to "nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombley,* 127 S.Ct*.* at 1974; *Malik v. Continental Airlines, Inc*., 305 Fed. Appx. 165, 167 (5th Cir. 2008); *Mitchell v. Johnson*, 2008 WL 3244283, *2 (5th Cir. 2008).

**Applicable law**

Both of the accidents which are the subject of the underlying lawsuits occurred on fixed platforms on the Outer Continental Shelf adjacent Louisiana, therefore, the applicable law governing this case is Louisiana law pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* Accordingly, the LOAIA applies to the MSCs at issue in this case.

**The MSC provisions**

Both MSCs had identical provisions requiring indemnity and insurance coverage at the time of these accidents. In the *Richard* case the MSC was between XTO (HPC) and Fluid Crane. In the *Fontenot* case the MSC was between Apache and Fluid Crane. Both have the following pertinent provisions:

**13)**   <u>**Insurance**</u>

    A)    Contractor shall secure and maintain, and shall require its Subcontractors to secure and maintain, during the term of the Contract, the following insurance coverages with limits not less than the amounts specified and with companies satisfactory to HPC, and shall furnish certificates of such insurance satisfactory to HPC before commencing the Work:

                  *            *            *

    C)    ALL LIABILITY INSURANCE COVERAGE (INCLUDING EMPLOYER'S LEGAL LIABILITY) CARRIED BY CONTRACTOR WITH RESPECT TO THE WORK WHETHER OR NOT REQUIRED BY OTHER PROVISIONS OF THE CONTRACT, SHALL EXTEND TO AND PROTECT THE HPC GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE, INCLUDING EXCESS OR UMBRELLA INSURANCES AND SHALL BE PRIMARY TO, AND RECEIVE NO CONTRIBUTION FROM, ANY OTHER INSURANCE OR SELF-INSURANCE PROGRAMS MAINTAINED BY OR ON BEHALF OF OR BENEFITTING THE HPC GROUP. THE LIMITS AND COVERAGES OF THE INSURANCES OBTAINED BY CONTRACTOR SHALL IN NO WAY LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED BY THE CONTRACTOR UNDER THIS CONTRACT OR ANY OBLIGATION OF CONTRACTOR TO DEFEND, INDEMNIFY AND HOLD HARMLESS THE HPC GROUP UNDER THIS CONTRACT. ALL OF THE CONTRACTORS [sic] LIABILITY INSURANCE POLICIES SHALL NAME THE HPC GROUP AS AN ADDITIONAL INSURED AND CONTAIN A WAIVER ON THE

-6-

PART OF THE INSURER, BY SUBROGATION OR OTHERWISE, OF ALL RIGHTS AGAINST THE HPC GROUP. ANY DEDUCTIBLE UNDER THE CONTRACTOR'S POLICIES OR INSURANCE SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR.

In order to avoid the application of the LOAIA, the MSCs contained the following provision:

**14)** **Work in or Offshore Louisiana**

THE FOLLOWING PROVISIONS APPLY WHERE WORK IS TO BE PERFORMED IN OR OFFSHORE LOUISIANA, NOTWITHSTANDING ANY PROVISIONS IN THIS CONTRACT TO THE CONTRARY.

A)   Independent of the consideration paid or to be paid by HPC for the services provided by Contractor under the Master Service Contract, and/or any Purchase Order or Work Order that it might be issued pursuant to this Master Service Contract, HPC shall pay to Contractor's insurers the premium (if any) arising from the HPC Group being named as an additional insured on Contractors liability insurance policies, including contractual liability coverage for the liabilities assumed under the contract and, if applicable, excess liability or umbrella policies. If there is to be an additional premium for such coverage, including any renewal or replacement thereof, Contractor agrees to supply satisfactory documentation from Contractor's insurer setting forth said additional premium for said coverage. Contractor warrants and represents that it has communicated with its insurer(s) regarding this provision of the Master Service Contract. Notwithstanding the general notice provisions of Section 29, all notices regarding such insurance shall be sent to HPC, c/o Purchasing Department. If Contractor does not notify HPC of any additional premium charged for such coverage, it shall be conclusively presumed that there is no additional premium charged for such coverage. Within fifteen (15) days of notice of the additional premiums charged for such coverage, HPC shall notify Contractor whether it will pay for the additional premium. If HPC notifies Contractor that it does not wish to pay the additional premium or fails to notify Contractor within such fifteen (15) day period, Contractor shall not be obligated to provide such coverage in favor of the HPC Group.

-7-

**The arguments of the parties**

 The argument of Fluid Crane is simple and direct. Fluid Crane argues that a literal reading of paragraph 14 of the MSC does not obligate Fluid Crane to provide additional insured coverage (*Marcel* coverage) for the subcontractors of XTO (HPC) or Apache, such as Island Operating. Furthermore, XTO (HPC) and Apache paid premiums to First Specialty to provide for additional insured coverage only for coverage for XTO (HPC) and Apache but neither paid a premium for First Specialty to name Island Operating (or any other member of the XTO (HPC) or Apache Groups) as additional insureds. Although no premium was paid, and therefore no coverage was provided, that was the choice of XTO (HPC) and Apache, but not the obligation of Fluid Crane.

Island Operating argues that there is a missing link in the factual chain which precludes granting the motion to dismiss. Island Operating argues that there is an unquestioned obligation on the part of Fluid Crane to arrange for *Marcel* coverage in favor of the XTO (HPC) and Apache Groups. If, as is asserted by First Specialty, no coverage was provided under its policy to the entirety of each "Group" the question which must then be asked is: Why not? Island Operating argues that the pleadings and attachments thereto do not answer the question of whether or not Fluid Crane, in fact, satisfied its contractual obligation, by which it warranted and represented, "that it has communicated with its insurer(s) regarding this provision of the Master Service Contract".

 Island Operating is correct.

-8-

At this stage of the proceedings it is not known whether Fluid Crane fulfilled its obligation to make known to First Specialty the relevant provisions of the MSCs. If so, and if it was the choice of XTO (HPC) and/or Apache to pay premiums solely for coverage for themselves and not for the entire Group then it would appear that Fluid Crane may well have fulfilled its obligation under the MSCs. If First Specialty was not so notified by Fluid Crane, then Fluid Crane may well have breached its obligation under the MSCs. The answer to that question is beyond the pleadings and appears to be clearly an issue of fact to be determined through discovery.

In *Marcel*, The Court said:

> The LOIA voids oilfield agreements to the extent the agreements contain provisions for indemnification for losses caused by negligence or fault of the indemnitee. (footnote omitted). Under the agreement at issue in *Patterson*, the employer of the injured plaintiff was required to provide insurance coverage indemnifying a third party, an arrangement within the reach of the LOIA and similar to the terms agreed to by Placid and SEE. The agreement provided, however, that the indemnitee would reimburse the employer for the insurance premiums. The indemnitee produced evidence documenting its payment of these premiums over a period of approximately eighteen months. Based upon this reimbursement, the court concluded that the agreement was not void because the indemnitee had paid for its own insurance.

> *                *                *

> We now adopt the exception created in *Patterson* as law of this Circuit and find that it has potential application here.FN12 The LOIA is aimed at preventing the shifting of the economic burden of insurance coverage or liability onto an independent contractor. If the principal pays for its own liability coverage, however, no shifting occurs. We see no need to prevent such an arrangement in order to give effect to the LOIA. Indeed, agreements such as the one in *Patterson* may be economically desirable in situations where it is less expensive for the independent contractor to add the principal

as an additional insured than for the principal to obtain its own insurance on a particular operation.

> FN12. SEE asserts that the exception should not apply because, unlike the situation in *Patterson*, Placid never paid any insurance premiums. We disagree. As SEE did not procure the insurance, which it had agreed to do, there were no premiums for Placid to pay. Further, only two months separated the time the parties entered the agreement at the end of October 1989 and the time of the accident on January 3, 1990; in *Patterson,* the indemnitee had paid premiums for approximately eighteen months.

11 F.3d at 569-570.

To the extent that this motion by Fluid Crane asks the Court to hold that its obligation to notify First Specialty as required by the MSCs in this case violates the LOAIA, the Court declines to do so. The Court sees no material difference between the obligation undertaken by Fluid Crane here and the obligation enforced by the Court in *Marcel* against SEE.

For the above reasons, the Motions to Dismiss are **denied.**[3]

      January 27, 2015, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

    [3]At oral argument, counsel for Island Operating invited the Court to assist counsel, and the offshore drilling industry, in discerning the meaning of *Marcel* as it affects day-to-day business in the Louisiana offshore oil and gas production business.

    The Court in *Marcel* remanded the case to the district court with the following instructions:

> We reverse the district court's summary judgment for SEE and remand Placid's third-party claims for reconsideration in light of *Patterson*. If Placid was responsible for the full cost of obtaining its insurance, the agreement is similar to that in *Patterson* and is not void under the LOIA; if SEE paid any material part of the cost of Placid's insurance, however, the district court should reinstate its summary judgment in favor of SEE.

11 F.3d at 570.

    Specifically, counsel invited the Court to opine on the meaning of the phrase "material part of the cost" of the insurance coverage. Counsel urged the Court to do so not only for guidance in this case but for industry-wide guidance as to the meaning *Marcel.*

    The Court declines the invitation.

    The Court can only decide those issues properly presented for decision. If and when this Court is faced with having to decide what the Fifth Circuit meant in *Marcel*, it will do so. Until that time comes, however, the Court expresses no opinion.